UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                     :

ALEJANDRO PALACIOS RENGIFO,
                                       :

        Petitioner,                :        REPORT AND
                                       :        RECOMMENDATION
      -v.-

UNITED STATES OF AMERICA,        :        14 Civ. 3997 (JSR)(GWG)
                                       :        09 Cr. 109 (JSR)

        Respondent.
                                       :
------------------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Following a bench trial on stipulated facts, Alejandro Palacios Rengifo was convicted of

conspiracy to commit hostage taking and aiding and abetting hostage taking in violation of 18

U.S.C. § 1203.  He was sentenced principally to a term of 15 years imprisonment.  Rengifo

brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 to vacate, set aside,

or correct his sentence.[1]  For the reasons discussed below, Rengifo's petition should be denied.

---

    [1]  See Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a
Sentence, filed May 16, 2014 (Docket # 1) ("Pet."); Memorandum of Law in Support of Palacios
Rengifo's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255, filed Oct. 2, 2014
(Docket # 13) ("Pl. Mem."); Affirmation of Beth M. Farber, filed Oct. 2, 2014 (annexed as Ex. A
to Pl. Mem.) ("Farber Aff'n"); Affidavit of Sonia Berah, filed Oct. 2, 2014 (annexed as Ex. B to
Pl. Mem.) ("Berah Aff."); Affirmation of Richard Levitt, filed Oct. 2, 2014 (annexed as Ex. C to
Pl. Mem.) ("Levitt Aff'n"); Affidavit of Alejandro Palacios-Rengifo, filed Oct. 2, 2014 (affidavit
in Spanish and English translation both annexed as Ex. D to Pl. Mem.) ("Rengifo Aff.");
Amended Memorandum of Law in Support of Palacios Rengifo's Petition for a Writ of Habeas
Corpus Pursuant to 28 U.S.C. § 2255, filed Oct. 9, 2014 (Docket # 15) ("Pl. Am. Mem.");
Memorandum of Law of the United States of America in Opposition to Alejandro Palacio [sic]
Rengifo's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence, filed
Jan. 15, 2015 (Docket # 22) ("Gov't Mem."); Reply Memorandum of Law in Support of Palacios
Rengifo's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255, filed Feb. 3, 2015
(Docket # 23) ("Pl. Reply").

I.      BACKGROUND

     A.      Indictment, Hearing on Duress Defense, Bench Trial, and Sentencing

The indictment charged that on or around April 4, 2008, in Panama City, Panama, one of Rengifo's co-defendants and several other unnamed individuals kidnapped Cecilio Padron, an American national.  See Sealed Indictment, filed May 12, 2009 (Docket # 10 in 09 Cr. 109) ("Indictment"), ¶¶ 2, 3.b., 4; Pl. Am. Mem. at 3.  Count One of the Indictment alleged that the defendants conspired to take a hostage in violation of 18 U.S.C. § 1203, and that one of the overt acts in furtherance of the conspiracy was that "[o]n or about April 6, 2008, . . . Rengifo . . . began to guard the victim, and continued to guard him, thereby preventing his release, until February 10, 2009."  Id. ¶ 1, 3.f.  Count Two alleged that the defendants "did seize, detain, and threaten to kill, to injure, and to continue to detain a national of the United States, in order to compel third persons to do an act as an explicit and implicit condition for the release of the national" and that Rengifo and two others aided and abetted the commission of that offense by "guard[ing] the victim thereby preventing his release," in violation of 18 U.S.C. § 1203 and § 2.  Id. ¶ 4.

On December 3, 2009, Rengifo was arrested in Colombia.  See Presentence Investigation Report, dated October 17, 2011 ("PSR"), ¶ 24.  He was extradited to the United States on December 9, 2010.  Id. ¶  28.

At arraignment, Beth Farber was appointed as Rengifo's attorney.  She represented him throughout trial and on appeal.  On March 15, 2011, Rengifo filed a motion in limine seeking to raise a duress defense and to offer expert testimony in connection with this defense.  See Notice of Motion, filed Mar. 15, 2011 (Docket # 67 in 09 Cr. 109).  Two of his co-defendants made similar motions.  In May 2011, Judge Rakoff held a three-day hearing on the motions.  (See

Proceedings held on May 9, 10, and 11, 2011 before Judge Jed S. Rakoff (Docket # 99 in 09 Cr. 109) ("Tr."), 1, 118, 246).  Rengifo testified at this hearing (see Tr. 12-94), as did two experts who had authored reports submitted in support of his motion (see Tr. 149-94 (Dr. Katherine Porterfield); Tr. 195-217 (Dr. Marc Chernick)).

Rengifo testified that when was 13 years old, he was taken from his family and forcibly conscripted into service with the Fuerzas Armadas Revolucionarias de Colombia, or "FARC." (See Rengifo: Tr. 19-21).  Rengifo was part of a sub-group of FARC called the 57th Front.  (See Rengifo: Tr. 62, 75).   While with FARC, Rengifo lived in the hills or jungle with other members of FARC only.  (Rengifo: Tr. 27, 42).

At the time he was conscripted, Rengifo was told by his commander that he would be killed if he fled FARC and was caught.  (Rengifo: Tr. 24).  Indeed, there was a "special order" that any soldier who was caught attempting to escape, or found to be planning to escape, would be killed.  (Rengifo: Tr. 44, 72).  Similarly, Rengifo testified that if he had helped another soldier escape, he himself would have been killed.  (See Rengifo: Tr. 46).  During his time with FARC, Rengifo knew of two soldiers who were subjected to a "war council" and executed for attempting to escape (see Rengifo: Tr. 24-26, 43) and one soldier who attempted to escape but ultimately returned and was not executed (see Rengifo: Tr. 41-42).  Rengifo also knew of many more soldiers who successfully escaped FARC.  (See Rengifo: Tr. 77-80).

At some point, he learned that he had been assigned to guard Padron.  (See Rengifo: Tr. 30).  Rengifo was told to guard Padron until he was relieved, or until Padron was released. (Rengifo: Tr. 35).  The guards were eventually armed with rifles (see Rengifo: Tr. 44).  Rengifo testified that he did not want to guard Padron (see Rengifo: Tr. 31) but that the order to guard Padron was a "special order," and that if Rengifo disobeyed, he would be killed (Rengifo: Tr.

32).  Rengifo had previously seen a soldier executed for refusing to follow a "special order"
from their commander.  (See Rengifo: Tr. 33).  Rengifo twice asked to be relieved from guard
duty, but these requests were denied.  (See Rengifo: Tr. 34, 36).  Eventually, Rengifo "got fed
up" with guarding Padron, packed his things, and talked to his commander once more about the
situation.  (Rengifo: Tr. 38-39).  The commander agreed to relieve Rengifo from his post
guarding Padron, but Rengifo came to believe that he would be subject to a "war council" and
executed as a result.  (See Rengifo: Tr. 38-39, 52-54, 68-69, 94).  Rengifo therefore decided to
escape, which he and four other members of FARC did with the help of Rengifo's cousin, on
February 10, 2009.  (Rengifo: Tr. 36, 54-55, 81-83, 93).  They escaped by means of a boat near
the main FARC camp in their area, which Rengifo drove.  (Rengifo: Tr. 54-55, 84).  They landed
on a beach, where they surrendered to Panamanian authorities.  (Rengifo: Tr. 86).  Eventually,
they were transferred to Colombian authorities and entered a "demobilization" program.
(Rengifo: Tr. 87).

     Rengifo conceded that at times only one person would be on duty guarding Padron.  (See
Rengifo: Tr. 45, 66).  Though he "felt sorry for" Padron (Rengifo: Tr. 35), Rengifo guarded him
for over two weeks before asking to be relieved (see Rengifo: Tr. 34), and he continued guarding
him for several more months after that request was denied (see Rengifo: Tr. 36).  In order to
scare Padron, Rengifo told him that if the army came near the hostage camp, Rengifo would kill
him and run away.  (Rengifo: Tr. 62).  But Rengifo also testified that he feared the consequences
that could result from refusing to follow the order to guard Padron (see, e.g., Rengifo: Tr. 32),
that he was told to scare Padron (see Rengifo: Tr. 62), and that he "was not in agreement with
the guerillas kidnapping people and having their relatives suffer over that" (Rengifo: Tr. 91).

     On May 23, 2011, Judge Rakoff issued an Order denying the three defendants' motions

4

to present a duress defense.  (Docket # 98 in 09 Cr. 109).  He further explained his decision in a

memorandum opinion.  See United States v. Pestana, 865 F. Supp. 2d 357 (S.D.N.Y. 2011),

aff'd, 525 F. App'x 41 (2d Cir. 2013).  In that decision, Judge Rakoff concluded that

> the defendant's own testimony is insufficient to establish that the defendants acted
> pursuant to a threat of force directed at the time of the hostage-taking, that the
> threat was sufficient to induce a well-founded fear of impending death or serious
> bodily injury, or that defendants lacked a reasonable opportunity to escape harm
> other than by engaging in the illegal activity.

Id. at 369 (citation omitted).  Judge Rakoff found that the additional expert testimony offered by

Rengifo did not alter this conclusion.  Id. at 369-70.

Following Judge Rakoff's decision, the Government and the defense agreed that the case

would proceed to a bench trial on stipulated facts.  See Farber Aff'n ¶¶ 3, 7; Pl. Am. Mem. at 1.

Farber indicates that she had told Rengifo that it was "technically still possible to have a jury

trial," but that there would be "no viable defense to raise."  Farber Aff'n ¶ 8.  She therefore

recommended that he "plead guilty," which she believed could be accomplished through the trial

on stipulated facts while preserving Rengifo's right to appeal Judge Rakoff's ruling disallowing

the duress defense.  See id. ¶¶ 7, 10.  Farber states that she did not discuss with Rengifo the

possibility that, at a jury trial, he could raise the defense that he lacked the requisite mens rea to

be convicted of the charged crimes.  Id. ¶ 9.

On June 7, 2011, Rengifo signed a waiver of his right to trial by jury.  See Waiver of

Trial by Jury, filed June 9, 2011 (Docket # 102 in 09 Cr. 109).  Before accepting this waiver,

Judge Rakoff addressed Rengifo personally — through a Spanish interpreter — at a hearing held

the same day.  See Transcript of Proceedings held on June 7, 2011 before Judge Jed S. Rakoff,

filed July 20, 2011 (Docket # 112 in 09 Cr. 109) (annexed as Ex. C to Gov't Mem.) ("June 7

Tr.").  The relevant portion of that colloquy was as follows:

| | |
|---|---|
| The Court: | Mr. Rengifo, I have here a piece of paper called a waiver that it appears you signed earlier today. |
| Rengifo: | Yes, sir. |
| The Court: | Before you signed it, was it read to you in Spanish? |
| Rengifo: | Yes, sir. |
| The Court: | Did you understand it? |
| Rengifo: | Yes, sir. |
| The Court: | Did you sign it in order to indicate your agreement to it? |
| Rengifo: | Yes. |
| The Court: | Now, you have a right to be represented by counsel at all stages of these proceedings.  Do you understand that? |
| Rengifo: | Yes, sir. |
| The Court: | And you went over this with your counsel before signing it, yes? |
| Rengifo: | Yes, sir. |
| The Court: | And you understand that this case was originally supposed to go to trial before a jury on June 20th, and you can still, if you want to, go to trial before a jury on June 20th?  Do you understand that? |
| Rengifo: | Yes, sir. |
| The Court: | And that jury would be composed of 12 members drawn from a cross-section of the community, 12 private citizens; do you understand that? |
| Rengifo: | Yes, sir. |
| The Court: | And you could participate in the selection of those jurors if the case went forward as a jury trial; do you understand that? |
| Rengifo: | Yes, sir. |
| The Court: | And do you understand that you could not be convicted of any crime unless that jury found that the government had proven every essential element of the charge beyond a reasonable doubt? |
| Rengifo: | Yes, sir. |
| The Court: | And — |
| Rengifo: | Could you repeat that? |
| The Court: | Do you understand that if the case went to the jury, you could not be found guilty unless all 12 jurors were unanimously agreed that you were guilty beyond a reasonable doubt?  Do you understand that? |
| Rengifo: | I understand, yes. |
| The Court: | Now, do I understand that instead you wish this case to be tried by me, by the judge? |
| Rengifo: | Yes, sir. |
| The Court: | And do you also understand that rather than have a trial at all, you could plead guilty, if you wanted to?  You have that right as well.  Do you understand that? |
| Rengifo: | Yes, I understand. |
| The Court: | And do you understand that if this case does go to trial before me, the proposal is that it be tried on stipulated facts, facts agreed to by |

6

|  | the party [sic]?  Do you understand that? |
|---|---|
| Rengifo: | Yes, sir. |
| The Court: | And the likelihood under those circumstances is that you will be found guilty; do you understand that? |
| Rengifo: | I understand that. |
| The Court: | And if you are found guilty, you will face a penalty up to life imprisonment; do you understand that? |
| Rengifo: | I understand. |
| The Court: | And do you understand that in imposing sentence, I will consider many factors but one of those factors will be what's called the sentencing guidelines, which recommend a sentence of 30 years to life?  Do you understand that? |
| Rengifo: | Yes, I understand that. |
| . . . . |  |
| The Court: | Do you understand, Mr. Rengifo, that if you are tried by the judge, by me, and you are found guilty, I [sic] will still have the right to appeal your conviction? |
| Rengifo: | I understand that, yes. |
| The Court: | But do you also understand that under these circumstances, it is likely that the only issue on appeal will be whether or not this Court was wrong in denying your duress defense as a matter of law?  Do you understand that's likely to be the only real issue on appeal? |
| Rengifo: | Yes, I understand. |
| The Court: | Now, in light of everything we have now discussed, is it still your desire to give up your constitutional right to a trial by jury, and to have this case tried on stipulated facts by me, by the Court? |
| Rengifo: | Yes, sir . . . . |

(June 7 Tr. 8-11).

The parties had presented the Court with a stipulation of facts upon which the bench trial was to be conducted.  See (Unsigned) Stipulation, filed June 10, 2011 (Docket # 106 in 09 Cr. 109) (annexed as Ex. A to Gov't Mem.) ("Stipulation").  This Stipulation described facts and evidence relevant to the charged crimes.  See id. ¶¶ 1-13.

The Stipulation recited that witnesses would testify that Rengifo was a member of the 57th Front of FARC, that Padron was held by the 57th Front, that Rengifo and others worked together to guard Padron and prevent his escape pending payment of a ransom, that Rengifo and others

threatened to kill Padron if he tried to escape, and that other members of the conspiracy demanded and obtained a ransom of $3 million.  Id.  The Stipulation contained concluding paragraphs that stated that these facts and evidence "establish[ed] proof beyond a reasonable doubt of each of the elements of the crimes with which the defendants are charged in the Indictment . . . ."  Id. ¶ 14.d; see id. ¶¶ 14.a-c.  The Stipulation provided that if the defendants were successful in their appeal of Judge Rakoff's decision disallowing the duress defense, they would be permitted to withdraw from the Stipulation.  See id. at 7.

At the June 7, 2011 hearing, Judge Rakoff addressed Rengifo with respect to the Stipulation:

| | |
|---|---|
| The Court: | Mr. Rengifo, I've been furnished with what's called a stipulation, which is a description of facts that you and the government have agreed to.  Was that stipulation read to you in Spanish? |
| Rengifo: | Yes, sir. |
| The Court: | And did you go over it carefully with your lawyer? |
| Rengifo: | Yes, sir. |
| The Court: | And did you understand the facts recited in the stipulation? |
| Rengifo: | Yes, sir. |
| The Court: | And did you understand that if this stipulation was accepted by the Court, the likelihood was high that the Court would find you guilty?  Do you understand that? |
| Rengifo: | Yes, sir. |
| The Court: | And knowing that, did you nevertheless sign the stipulation and agree to it? |
| Rengifo: | I signed it, yes, sir. |
| The Court: | And, Ms. Farber, I don't know if you wanted to add anything. |
| Farber: | Your Honor . . . I actually went over this twice prior to today.  And today we had it again read verbatim by a Spanish translator to Mr. Rengifo so that the copy he signed would have been read to him. |
| The Court: | I will accept the stipulation and give it to my courtroom deputy to docket. |

(June 7 Tr. 16-17).

On June 20, 2011, Judge Rakoff issued an Order finding Rengifo guilty of both counts of the Indictment.  See Order, dated June 20, 2011 (Docket # 108 in 09 Cr. 109).  On October 24,

2011, Rengifo was sentenced principally to 15 years imprisonment.  See Judgment in a Criminal

Case, dated Nov. 5, 2011 and filed Nov. 15, 2011 (Docket # 122 in 09 Cr. 109).

C.    Direct Appeal

Rengifo appealed to the Second Circuit, arguing that the district court improperly

prevented him from presenting a duress defense and that his sentence was procedurally and

substantively unreasonable.  See Brief of Appellant Palacios Rengifo with Special Appendix,

filed May 8, 2012 (Docket # 60 in United States v. Mora Pestana (2d Cir. No. 11-4860)), at 17-

56.  On May 20, 2013, the Second Circuit affirmed both Rengifo's conviction and his sentence.

See United States v. Ortiz, 525 F. App'x 41 (2d Cir. 2013) (summary order).  Rengifo's petition

for a writ of certiorari was denied on October 7, 2013.  See Rengifo v. United States, 134 S.Ct.

351 (2013).

D.    The Instant Petition

Rengifo filed the petition in this case pro se, on May 16, 2014.  See Pet.  The petition

stated that it was being sought based on claims of "ineffective assistance of counsel."  See id.

¶ 3.  Ultimately, Rengifo obtained counsel, who filed a memorandum of law in support of his

motion.  See Pl. Mem.; Pl. Am. Mem.  Accompanying the memorandum of law were affidavits

from Farber, see Farber Aff'n; his current attorney, see Levitt Aff'n; his former court-appointed

interpreter, see Berah Aff.; and Rengifo, see Rengifo Aff.  The issues being raised are as follows:

(1) that Farber was ineffective because she did not argue, either before the district court or the

court of appeals, that Rengifo was entitled to be apprised of certain rights set forth in Boykin v.

Alabama, 395 U.S. 238 (1969) and Fed. R. Crim. P. 11 prior to proceeding to the bench trial on

stipulated facts; (2) that Farber was ineffective because she did not object to Judge Rakoff's

alleged failure to ensure that Rengifo entered into the waiver of his right to a jury trial and the

9

Stipulation voluntarily and knowingly; and (3) that Farber was ineffective because she did not explain to Rengifo that he could present the same evidence offered as part of the disallowed duress defense to negate mens rea at trial.[2]  See Pl. Am. Mem. at 2, 7-26.

## II.   GOVERNING LEGAL PRINCIPLES

28 U.S.C. § 2255(a) provides that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Relief under this statute is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice."  Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (citation and internal quotation marks omitted).  "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (citation and internal quotation marks omitted).  A testimonial hearing is required to

---

[2]  For reasons explained in the Court's Order of August 25, 2015 (Docket # 24), the Court was unclear as to the nature of Rengifo's claims even after counsel filed the memoranda of law and other papers supporting the petition.  Accordingly, the Order directed Rengifo to list each claim he was raising if not one of the three listed above.  Rengifo's response, see Letter from Richard Levitt, filed Aug. 28, 2015 (Docket # 25), lists no additional claims.  Instead, it points to a footnote in his memorandum in support of the petition.  See id.; see also Letter from Andrea Surratt, filed Sept. 8, 2015 (Docket # 26) (the Government's response to the argument contained in this footnote).  We do not construe this footnote as raising any claims other than the three claims listed above, however.  Accordingly, we do not address any other claims.

adjudicate a section 2255 motion only in circumstances not present here.  See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (district court's review of the papers submitted with respect to the petition constituted a sufficient hearing).

To prove ineffective assistance, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)); accord United States v. Brown, 623 F.3d 104, 112 (2d Cir. 2010); Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003); see Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.").

In evaluating the first prong — whether counsel's performance fell below an objective standard of reasonableness — "'[j]udicial scrutiny . . . must be highly deferential,'" and the petitioner must "overcome the 'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'"  Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689) (alteration in original); see Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (according counsel a presumption of competence).  With respect to the second prong — the prejudice requirement — the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694; accord Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006).

The Strickland test applies to claims that appellate counsel was ineffective.  See Smith v.

11

Robbins, 528 U.S. 259, 285 (2000).  Thus, "a petitioner who alleges ineffective assistance of appellate counsel must demonstrate that appellate counsel acted objectively unreasonably in failing to raise a particular issue on appeal, and absent counsel's deficient performance, there was a reasonable probability that petitioner's appeal would have been successful . . . ." Anderson v. Keane, 283 F. Supp. 2d 936, 941 (S.D.N.Y. 2003) (citation omitted).  One of the main functions of appellate counsel, however, is to "winnow[] out weaker arguments on appeal." Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Therefore, appellate counsel is not required to present every nonfrivolous claim on behalf of a defendant appealing his or her conviction. Robbins, 528 U.S. at 288 ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citation omitted).  As a consequence, "[i]n attempting to demonstrate that appellate counsel's failure to raise a . . . claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument . . . ."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Barnes, 463 U.S. at 754).  Rather, a petitioner must show that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id.; accord Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000).

III.   DISCUSSION

   A.   Counsel's Failure to Object to the Lack of *Boykin* or Rule 11 Warnings

   Rengifo's first claim of ineffective assistance of counsel relates to Farber's failure to object — at the time of trial or on appeal — to the fact that the district court did not fully advise him of his rights under Boykin or Fed. R. Crim. P. 11 before accepting the stipulation and waiver of a jury trial.  See Pl. Am. Mem. at 2, 7-18, 21-22, 26; Pl. Reply at 1-3.

12

In <u>Boykin</u>, the Supreme Court held that a court accepting a guilty plea must establish that the defendant entered into the plea knowingly and voluntarily.  <u>See</u> 395 U.S. at 242-43.  <u>Boykin</u> noted that a defendant who pleads guilty waives a number of constitutional rights, including the Fifth Amendment privilege against self-incrimination, the right to trial by jury, and the right to confront his accusers.  <u>See id.</u> at 243.  <u>Boykin</u> reversed a conviction because the record did not show that the defendant had made a knowing waiver of these rights.  <u>See id.</u> at 244.  Fed. R. Crim. P. 11(b)(1) expands on <u>Boykin</u> by providing that "[b]efore the court accepts a plea of guilty or nolo contendere, . . . the court must address the defendant personally in open court" and must inform the defendant of a number of facts and rights listed in the rule — including those mentioned in <u>Boykin</u> — and determine that he understands them.  <u>See id.</u>

At the time Rengifo agreed to proceed to a bench trial on stipulated facts, Judge Rakoff allocuted Rengifo regarding his understanding of the process, his desire to go to trial on stipulated facts, and his decision to waive trial by jury.  (<u>See</u> June 7 TR. 8-11, 16-17).  He did not, however, advise Rengifo regarding his right to confront his accusers or his Fifth Amendment right not to incriminate himself.  Nor did he discuss a number of other rights listed in Fed. R. Civ. P. 11(b)(1), such as Rengifo's right to present evidence, to compel attendance of witnesses, and his right to testify on his own behalf.

Rengifo argues at length that the rights enumerated in <u>Boykin</u> and Rule 11 must be part of a colloquy where a defendant agrees to a trial on stipulated facts.  <u>See</u> Pl. Am. Mem. at 7-18. Rengifo emphasizes that the Stipulation here contained, in addition to the facts necessary to support the elements of the crimes charged, further provisions in which Rengifo explicitly agreed that the facts stipulated to established beyond a reasonable doubt that he had committed the crimes he was charged with.  <u>See id.</u> at 9.  In Rengifo's view, these provisions rendered the

13

proceeding akin to a guilty plea.  See id. at 9-18.  For its part, the Government makes a strong

argument that the Second Circuit case of United States v. Wellington, 417 F.3d 284 (2d Cir.

2005), forecloses Rengifo's argument.  See Gov't Mem. at 14-16.  In Wellington, the defendant

was convicted following a bench trial at which the only evidence was his stipulation as to each

element of the charged offense.  See 417 F.3d at 286-87.  The Second Circuit held that a district

judge accepting a defendant's stipulation as to the elements of the charged offense "must ensure

(1) that the stipulation is voluntarily made and (2) that the defendant understands the

consequences of his stipulation."  Id. at 291 (citing United States v. Curcio, 620 F.2d 881, 889

(2d Cir. 1982).  But it specifically noted that "the full panoply of Rule 11 procedures are not

necessary where a defendant stipulates to facts establishing guilt."  Id. at 290 (citing cases).

It is not necessary to reach the issue of whether Farber was ineffective in failing to point

out this potential failing in the allocution, however, because Rengifo's claim cannot satisfy the

prejudice prong of the Strickland analysis.  Specifically, he has not shown that, but for Farber's

alleged unprofessional error in not objecting to the allocution, there is a "reasonable probability"

that he would have refused to agree to the bench trial on stipulated facts and instead gone to a

jury trial without any stipulations.  Strickland, 466 U.S. at 694.  Fatal to his claim, Rengifo

nowhere asserts that he would have opted for a jury trial had Judge Rakoff advised him of all the

rights listed in Rule 11 and in Boykin. Rengifo's memorandum of law asserts that had Rengifo

"understood" his Rule 11 and Boykin rights, he would have chosen a jury trial because such an

understanding would have caused Farber to advise him to opt for a jury trial.  Pl. Am. Mem. at

22.  This assertion, however, is unsupported by any statement of Farber or any other evidence in

the record.  Moreover, all of the evidence Rengifo has submitted indicates that his decision to

have a bench trial on stipulated facts did not depend on Judge Rakoff's explanation of his rights.

14

Farber states that Rengifo was "particularly dependent on [her] to help him through the case," and he took her "advice on all matters regarding the decisions he had to make in this case without questioning the wisdom or alternatives."  Farber Aff'n ¶ 5; <u>see</u> Levitt Aff'n ¶ 15 ("[I]f Ms. Farber had recommended that he proceed to a jury trial he would have done so.").[3]  Farber never states that, had Judge Rakoff acceded to an objection from Farber that he advise Rengifo of the additional rights contained in <u>Boykin</u> and Rule 11, she would have thereupon advised Rengifo to go to a jury trial.  And, had such a claim been made, it would be incredible inasmuch as Farber had made a reasoned judgment that a bench trial on stipulated facts was in Rengifo's best interest.  <u>See</u> <u>generally</u> Farber Aff. ¶ 7.  It would be absurd to suppose that Farber, having made an objection to the allocution and having gotten Judge Rakoff to refer to the other rights in Rule 11, would have reversed course and recommended that Rengifo spurn the bench trial on stipulated facts.

Case law holds that ordinarily a finding of prejudice "requires some objective evidence other than defendant's assertions."  <u>Pham</u>, 317 F.3d at 182 (citation omitted).  While Rengifo has not even made any assertions establishing prejudice, the objective evidence by itself makes plain that Rengifo had an excellent reason to proceed to trial on stipulated facts.  Proceeding in that manner, rather than going to trial before a jury without such stipulations, allowed for a far stronger argument that Rengifo was entitled to a reduction in his sentence under the Sentencing

---

[3]  In a submission that is in this Court's experience unprecedented, Rengifo has not submitted an affidavit making specific statements regarding the factual issues being raised in this case.  Instead, his attorney submitted an affidavit in which he recounts one or more conversations with Rengifo.  <u>See</u> Levitt Aff'n.  Rengifo then submitted an affidavit in which he "certif[ies] that all statements Mr. Levitt makes in his affirmation about such matters" — apparently referring to what Rengifo "understood regarding the things that happened and the decisions [he] made leading up to [his] conviction and sentence" — are "accurate."  Rengifo Aff. ¶¶ 2, 3.

Guidelines for "acceptance of responsibility."  See U.S. Sentencing Guidelines Manual § 3E1.1. While such a reduction is certainly not guaranteed, see, e.g., United States  v. Seidling, 737 F.3d 1155, 1162 (7th Cir. 2013), the decision to seek a reduction in sentence for acceptance of responsibility where a defendant stipulates to the facts of his guilt has received support from courts in a number of instances, see, e.g., United States v. Pacheco-Diaz, 506 F.3d 545, 550 (7th Cir. 2007) (the Government agreed that the defendant "was entitled to a two-point acceptance of responsibility reduction because he agreed to a bench trial on stipulated facts"), overruled on other grounds by Carachuri-Rosendo v. Holder, 560 U.S. 563 (2010); Adams v. Peterson,  968 F.2d 835, 842 (9th Cir. 1992) ("There may be a variety of strategic reasons for proceeding by a stipulated facts trial, ranging from preservation of issues for appeal to attempting to mitigate the sentence by a partial acceptance of responsibility or by controlling the evidence presented to the sentencer."); United States v. Ryan, 964 F. Supp. 526, 533 (D. Mass. 1997) (defendant was entitled to a reduction of two levels on the grounds of acceptance of responsibility where defendant "stipulated to the facts underlying the contempt offense and exercised his right to trial solely for the purpose of raising an important double jeopardy issue"); cf. United States v. Washington, 340 F.3d 222, 230 (5th Cir. 2003) (where the defendant "stipulated to all of the facts necessary for his conviction," the district court should not have denied a reduction for acceptance of responsibility merely because the defendant pursued a motion to suppress).[4] Thus, any claim now that Rengifo would have spurned the bench trial on stipulated facts had he

---

[4]  As it turned out, counsel's strategy was actually successful here inasmuch as the probation department recommended a three-point reduction for acceptance of responsibility, see PSR ¶ 52, the Government agreed with the reduction, see Government's Sentencing Memorandum, filed Oct. 12, 2011 (Docket # 115 in 09 Cr. 109), at 18, and Judge Rakoff concurred in the reduction, see Transcript of Sentencing held on Oct. 24, 2011(Docket # 128 in 09 Cr. 109), at 12.

simply been advised by Judge Rakoff as to his <u>Boykin</u> and Rule 11 rights is inherently incredible.  But again, no such claim has even been made.  Thus, Rengifo has not met the prejudice prong of the <u>Strickland</u> analysis.

Finally, the claim of ineffective assistance of appellate counsel must also be denied.  Because there was no viable claim of ineffective assistance of trial counsel, appellate counsel cannot be faulted for having failed to raise it.  <u>See</u>, <u>e.g.</u>, <u>Rolling v. Fischer</u>, 433 F. Supp. 2d 336, 351 (S.D.N.Y. 2006) ("[T]here can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless.") (citations omitted).

B.    <u>Counsel's Failure to Object that the District Court Did Not Ensure the Waiver Was Knowing and Voluntary</u>

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."  <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970).  As already noted, <u>Wellington</u> held that a district judge accepting a defendant's stipulation as to the elements of the charged offense "must ensure (1) that the stipulation is voluntarily made and (2) that the defendant understands the consequences of his stipulation."  417 F.3d at 291 (citation omitted).  Notwithstanding the detailed and searching inquiry conducted by Judge Rakoff when he accepted the Stipulation and waiver of jury trial, <u>see</u> June 7 Tr. 8-11, 16-17, Rengifo argues that the colloquy was insufficient to have allowed Judge Rakoff to find that his waiver was voluntary and knowing, <u>see</u> Pl. Am. Mem. at 18-21, and that Farber was ineffective by failing to protest at the time or on appeal, <u>see</u> <u>id.</u> at 21-22.  Rengifo contends that his "robotic[]," "one word answer[s]" to Judge Rakoff's questions, coupled with his background, "cried out for a more

searching inquiry than is the norm." Id. at 18-19.

While we do not believe that any fault can be found with Judge Rakoff's conduct of the inquiry, it is not necessary to reach this question because once again there has been no showing of prejudice under Strickland. Rengifo offers no evidence that had Farber objected to Judge Rakoff's inquiry, and had additional inquiry been made of Rengifo as to the voluntariness of his decision and his understanding of it, that he would have rejected Farber's advice and chosen to have a jury trial with no facts stipulated. Nor has Farber claimed that some additional colloquy would have caused her to advise him to make such a choice. And, as already noted, there was good reason for Farber to advise Rengifo to proceed to a bench trial on stipulated facts in order to obtain credit for acceptance of responsibility and preserve his right to challenge the duress ruling on appeal.

While Rengifo never states in his submissions that he would have chosen to have a jury trial had Judge Rakoff made further inquiry of him, any such claim would not have been credible given that Rengifo had multiple opportunities to discuss this decision with Farber. See Berah Aff. ¶ 2 (the court-appointed interpreter interpreted "approximately 10-20 attorney-client meetings" between Rengifo and Farber). And, as discussed above with respect to the Rule 11 and Boykin warnings, the only objective evidence offered by Rengifo indicates that he would have followed Farber's advice in any case, regardless of what additional questions Judge Rakoff asked to ensure that his waiver and stipulation were voluntary and knowing. See Farber Aff'n ¶ 5 (Rengifo "took [Farber's] advice on all matters regarding the decisions he had to make in this case without questioning the wisdom or alternatives"); Levitt Aff'n ¶ 5 (Rengifo "simply went along with whatever his attorney recommended, with little understanding of what was occurring"); ¶ 15 ("[I]f Ms. Farber had recommended that he proceed to a jury trial he would

have done so.").  Rengifo therefore was not prejudiced by Farber's allegedly improper failure to

object to those aspects of the colloquy at the June 7 hearing.

       Once again, because any claim of ineffective assistance by trial counsel was meritless,

the claim for ineffective assistance of appellate counsel for failure to raise this claim also fails.

Rolling, 433 F. Supp. 2d at 351.

      C.    Counsel's Failure to Advise Rengifo that He Could Present Duress Evidence to
              Negate Mens Rea at Trial

       Rengifo claims that Farber was ineffective because she failed to advise him that, if the

case proceeded to trial by jury, he could present evidence similar to what he offered as part of

the proposed duress defense — which we will refer to for convenience as the "duress evidence"

—  to negate the mens rea element of the charged crimes.  See Pl. Am. Mem. at 2, 22-25.

Specifically, Rengifo argues that he could have put before a jury

     his story of abuse at the hands of FARC; his disdain for that organization; his
     complete disassociation from FARC's objectives vis a vis Mr. Padron; his desire
     to not guard Mr. Padron but for his fear of execution if he did not; and his
     eventual escape from FARC when the balance of fears shifted when he thought he
     would imminently be killed.

Id. at 22; see id. at 24-25.  Rengifo contends that the duress evidence would have supported an

argument that he lacked the mens rea to be convicted both of Count One of the Indictment,

conspiracy to commit hostage taking, and Count Two, aiding and abetting the offense of hostage

taking.  See id. at 24; Indictment ¶¶ 1-2, 4.  The Government counters that the evidence would

not have been relevant to mens rea and would merely invite jury nullification, and that therefore

Farber's failure to inform Rengifo of this possibility does not meet the "reasonableness" prong to

demonstrate ineffective assistance of counsel under Strickland, 466 U.S. at 688-90.  See Gov't

Mem. at 23-28.  It also argues that he has not met the "prejudice" prong of Strickland, 466 U.S.

at 691-94.  See Gov't Mem. at 28.

It is not necessary to reach the "reasonableness" issue because it is plain that Rengifo has not satisfied the "prejudice" prong of Strickland, 466 U.S. at 691-94.  As already noted, there was good reason for Rengifo to agree to a bench trial on stipulated facts because it both allowed the preservation of the duress defense issue for appeal and raised a far stronger possibility of obtaining a sentence reduction for acceptance of responsibility than would have been available following a jury trial in which Rengifo would have testified in an effort to negate a critical element of the crimes he was charged with.

The threshold question on the prejudice prong is whether there was a "reasonable probability," id. at 694, that had Farber informed Rengifo of the possibility of going to trial and introducing his duress evidence to negate mens rea, he would have elected to have a jury trial.  This question is easily answered as there is no evidence whatsoever that Rengifo would have chosen to proceed to a jury trial had he been advised on the possibility of using the duress evidence to negate mens rea.  Importantly, Rengifo himself never says that he would have done so.  He says only — once again, by adopting his attorney's recounting of their conversation, see Rengifo Aff. ¶ 3 — that he would have proceeded to a jury trial "if Ms. Farber had recommended" that he do so, Levitt Aff'n ¶ 15.  For her part, Farber never contends that she would have recommended that Rengifo to proceed to a jury trial had she considered the possibility of using the duress evidence to negate mens rea.  Farber says only that she now believes that presentation of the duress evidence to negate mens rea "was a viable defense." Farber Aff'n ¶ 9.  There is thus no evidence in the record that Rengifo would have proceeded to a jury trial had Farber presented this option to him.  For this reason alone, Rengifo does not meet the prejudice prong of the Strickland inquiry.  See, e.g., Hernandez v. United States, 2010 WL

1558559, at *11 (S.D.N.Y. Apr. 19, 2010) (rejecting an ineffective assistance argument where the petitioner "provides no actual or objective evidence that would support his assertion that but for [his attorney's] purported errors, he would have taken his case to trial").

While it is not necessary to delve further into the issue, we note that, even if Rengifo had asserted that he would have chosen to proceed to a jury trial, such an assertion would not have been credible inasmuch as it would have been wholly lacking in any "objective evidence" to support it.  Pham, 317 F.3d at 182 (citing Gordon, 156 F.3d at 380-81).  Where a petitioner asserts that he would have chosen to proceed to trial rather than plead guilty — a situation analogous in some respects to what occurred here — he must show that the decision to proceed to trial "would have been rational under the circumstances."  Padilla v. Kentucky, 559 U.S. 356, 372 (2010).  In the case of an attorney's failure to advise the defendant of a potential affirmative defense to the crime charged, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985) (citation omitted).  The same principle has been applied where a defendant claimed her counsel was ineffective in failing to inform her of a possible "lack of intent" defense.  See Valentine v. Lord, 2006 WL 1997708, at *6 (S.D.N.Y. July 18, 2006).

Cases in which petitioners assert that they would have elected to go to trial rather than plead guilty had they been advised properly have held that the petitioner must show "that he would have been acquitted or at least received a shorter sentence after conviction."  Holman v. Ebert, 2007 WL 4591718, at *5 (E.D.N.Y. Dec. 28, 2007); accord Gelzer v. Fischer, 2007 WL 3539598, at *4 (E.D.N.Y. Nov. 14, 2007) (noting that Hill "implied that to demonstrate prejudice, petitioner must show not only that he would have gone to trial, but that he either would have been acquitted or, if convicted, sentenced to a lesser term than he received pursuant

21

to his guilty plea"); see also United States v. Horne, 987 F.2d 833, 836 (D.C. Cir. 1993)

(affirming denial of a habeas petition in part because the petitioner "offered nothing to suggest

that he would have succeeded if he had gone to trial"); United States v. Curry, 344 F. Supp. 2d

22, 27 (D.D.C. 2004) (inquiry into whether the defendant would have pleaded differently and

gone to trial "is 'closely related to the objective prediction of whether the defense could succeed

if the case went to trial'") (quoting United States v. Del Rosario, 902 F.2d 55, 58 (D.C. Cir.

1990), abrogated on other grounds by Padilla, 559 U.S. 356), aff'd, 494 F.3d 1124 (D.C. Cir.

2007).

> For the reasons already described, it is obvious that Rengifo would not have received a

shorter sentence if convicted following a jury trial without stipulated facts, as he would have

been hard-pressed to obtain any credit for acceptance of responsibility.

> To examine the potential for acquittal at such a trial, we begin by setting forth the

elements of the crime of conspiracy.   These are:

> > (1) an agreement between two or more persons to commit an unlawful act; (2)
> > knowingly engaging in the conspiracy intending to commit those offenses that
> > were the objects of the conspiracy; and (3) commission of an "overt act" by one
> > or more members of the conspiracy in furtherance of the conspiracy.

E.g., United States v. Reyes, 302 F.3d 48, 53 (2d Cir. 2002) (citations omitted).  With respect to

the second element, "[t]here are 'two aspects of knowledge involved in a conspiracy: 1) knowing

participation or membership in the scheme charged and 2) some knowledge of the unlawful aims

and objectives of the scheme.'"   United States v. Ferrarini, 219 F.3d 145, 154-55 (2d Cir. 2000)

(quoting United States v. Lanza, 790 F.2d 1015, 1022 (2d Cir. 1986)).  "The government need

not show that the defendant knew all of the details of the conspiracy, 'so long as he knew its

general nature and extent.'"   United States v. Huezo, 546 F.3d 174, 180 (2d Cir. 2008) (quoting

United States v. Rosa, 17 F.3d 1531, 1543 (2d Cir. 1994)).

The elements of aiding and abetting liability under 18 U.S.C. § 2 are that a person "(1) takes an affirmative act in furtherance of [an] offense, (2) with the intent of facilitating the offense's commission." Rosemond v. United States, 134 S. Ct. 1240, 1245 (2014) (citing 2 Wayne R. LaFave, Substantive Criminal Law, § 13.2, p. 337 (2d. ed. 2003)). "To aid and abet a crime, a defendant must not just 'in some sort associate himself with the venture,' but also 'participate in it as in something that he wishes to bring about' and 'seek by his action to make it succeed.'" Id. at 1248 (quoting Nye & Nissen v. United States, 336 U.S. 613, 619 (1949)); accord 1 Sand et al., Modern Federal Jury Instructions, Criminal, Instruction 11-2 ("Modern Instr."). Intent here means "that the defendant, 'knowing what the principal was trying to do, rendered assistance that he believed would . . . make the principal's success more likely." Modern Instr. at 11-14 (quoting United States v. Ortega, 44 F.3d 505, 508 (7th Cir. 1995)) (alteration in original).

Rengifo does not contest that the crime of hostage taking under 18 U.S.C. § 1203 was committed. Rather, his claim must be that a jury would have acquitted him of the charged crimes of conspiracy to commit hostage taking and aiding and abetting hostage taking because he would have presented evidence tending to negate the mens rea elements of those crimes. See id. at 2, 23-25.

Had Rengifo attempted to offer the duress evidence at trial, the first hurdle he would have faced was whether the evidence would have been admissible at all. To be admissible, Rengifo would have had to show that the evidence was in fact relevant to negate mens rea, and not merely offered as an end-run around Judge Rakoff's ruling disallowing him from presenting a duress defense. See United States v. Baxt, 74 F. Supp. 2d 436, 440-41 (D.N.J. 1999) (where

the defendant proposed to offer expert testimony to show that he lacked the <u>mens rea</u> to commit the charged crime, the "burden of showing that proffered testimony is offered to negate the <u>mens rea</u> element of a crime and not in support of some improper defense theory falls squarely on the defendant"); <u>see also</u> <u>United States v. Villegas</u>, 899 F.2d 1324, 1343 (2d Cir. 1990) (where the evidence to be presented in support of a duress defense would be insufficient as a matter of law, "no proper interest of the defendant would be served by permitting his legally insufficient evidence to be aired at trial, and interests of judicial economy suggest that the jury should not be burdened with the matter"); Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means.").

Rengifo cites no case suggesting that the evidence at issue would be admissible. And we do not see how his hatred of FARC and the coercion that allegedly caused him to continue aiding FARC in any way negated his "specific intent" to guard Padron for purposes of the conspiracy charge. <u>United States v. Monaco</u>, 194 F.3d 381, 386 (2d Cir. 1999) ("To prove conspiracy, the government must show," <u>inter alia</u>, that the defendant "knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy") (internal quotation marks and citation omitted). Nor is it relevant to showing whether he "actively participate[d]" in the hostage-taking scheme "knowing its extent and character," <u>Rosemond</u>, 134 S.Ct. at 1249 — a showing that is sufficient to establish "intent" under the aiding and abetting statute, <u>id.</u>

The irrelevance of the duress evidence is explained in the Supreme Court case of <u>Dixon v. United States</u>, 548 U.S. 1 (2006). In <u>Dixon</u>, the defendant was charged with "knowingly" and "willfully" committing certain criminal acts, including making false statements in buying a firearm, but she argued that she had done so only because her boyfriend had threatened to kill

her or hurt her daughters if she did not do them.  Id. at 3-5.  Thus, she argued that she had not

"formed the necessary mens rea for these crimes" because she had not "freely [chosen] to

commit the acts in question."  Id. at 5.  The Court rejected that argument, however, explaining

that "[t]he duress defense, like the defense of necessity . . . , may excuse conduct that would

otherwise be punishable, but the existence of duress normally does not controvert any of the

elements of the offense itself."  Id. at 6 (emphasis added) (footnote and internal citation omitted).

The Court held that, even assuming the defendant's "will was overborne by the threats made

against her and her daughters, she still knew that she was making false statements and knew that

she was breaking the law by buying a firearm."  Id. (emphasis in original).  Similarly, the

evidence at the duress hearing showed that Rengifo intended to take the steps he took to guard

Padron and acted knowingly in doing so.  We therefore think it highly unlikely that the duress

evidence would have been found admissible.

Even if it had been admitted, Rengifo does not contest that he had the "knowledge that

FARC sought to ransom Mr. Padron," Pl. Am. Mem. at 24; see Rengifo: Tr. 34, and that he

purposely guarded Padron and prevented Padron from escaping, thus furthering the hostage

scheme of which Rengifo was well aware, see Rengifo: Tr. 34, 36, 44, 64.  Indeed, as he

explicitly acknowledges, Rengifo "intended to detain" Padron.  Pl. Reply. at 4.  Thus his own

testimony provided essentially uncontroverted evidence that he had the mens rea necessary to

commit the crimes he was charged with.  We think it highly unlikely that a jury would have

concluded that Rengifo did not intend to detain Padron and to aid FARC in the kidnapping

scheme.  That he formed the intent to commit these acts because he feared the consequences of

not complying with orders from FARC did nothing to lessen his intent.

Given these circumstances, it obviously would have been foolish for Rengifo to risk a

25

virtually certain conviction from a jury, with far less chance of obtaining a sentence reduction for acceptance of responsibility, rather than to proceed in the manner in which he did. Because he has not shown he was prejudiced by Farber's allegedly improper failure to advise him regarding the use of the duress evidence, his claim for ineffective assistance of counsel fails.

IV.   CONCLUSION

For the reasons discussed above, Rengifo's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Jed S. Rakoff at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Rakoff. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: September 28, 2015
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

26